May it please the Court, I'm Janet Schraer and I represent the defendants Detective Bond, Detective Wilbur and Detective Schrader. We're here on an interlocutory appeal on the qualified immunity ruling the district court ruled against the qualified immunity. Plaintiff is bringing claims for false arrests as well as malicious prosecution and at issue is the question of whether there was probable cause or arguable probable cause to effect arrest on plaintiff who later turned out not to be the actual robber in question. Sir would you start out with the issue of probable cause? As I read this record what you have are two people at one pharmacy who initially say the guy who came to fill a prescription looks like the robber but when they're confronted with a photo array neither of them can pick him out, correct? Well there were eight photographs and they narrowed it down to two. Okay, but well one person narrowed it down to two the other one said she couldn't, correct? I thought they both thought they narrowed it down to two and they were remarkably similar if you saw the photograph. Okay, so let's assume that they know they narrow it down to two. Do you have probable cause at that point to arrest? I think you do but you don't need probable cause. You do? Somebody says here's two photographs, it's not more probable than not that one was the robber. I think you have to look at the fact that they observed this person, first of all they saw the robbery to begin with, those two people, Mears and I can't remember the other guy's name, they witnessed the first robbery and then they saw him come in in person to the pharmacy on the same date as the last person and identified him at 80% and 90% reliability based on seeing him. And then when shown, because eyewitnesses often have difficulties, when shown the actual photos of an array that include Mr. Horsman's photo, as I read the record one person narrowed it down to two and the other could not identify Mr. Horsman, the photo of Mr. Horsman. I'll accept your question. That's 50-50. That's not probable cause, is it? Well, that's not all there was either. So it's not only that evidence. They've retreated from the initial statement at that point, I'm 80% sure this is the robber, and they've now said, well, when you show me somebody who looks like him, I'm 50, all I can do is 50-50. Is that probable cause? I think on the whole body of evidence that these defendants had before them. Well, I've just recited the whole body. We've just recited the whole body of evidence, haven't we? No. Any other evidence for those two people? Oh, for those two people. I think there was the surveillance picture as well. Which is, you admit, are inconclusive. It was vague, but again, they also witnessed the actual robber the first time around, and then they saw this person. These are citizens who volunteered. The police didn't suggest anything to them. They called the police. They didn't suggest until the second array. That's why I'm focusing on the first one. Correct. That's right. When the police go to that first Rite Aid to interview these two eyewitnesses, they seized the prescription, correct? They did. And the prescription shows that it was prescribed on the day of one of the other robberies. It showed that the prescription was written on that date, correct, on the day of the last robbery. And the provider's name is on it. Correct. Does anybody ever call the provider and find out whether or not Mr. Horseman was with the provider on the day of that robbery? The provider was not contacted prior to the arrest, but there was nothing to indicate that that prescription was going to provide an alibi. Well, except he's got a prescription on the day of one of the robberies he was arrested for, for the very thing that he robbed. Right? It's as if I have a prescription for oxycodone and I take it to the store. I could take it to any store and get it filled, but instead I'm going to rob the store. Well, it's not that persistent. Isn't that at least something that would raise some inquiry? People who are on oxycodone, who abuse oxycodone, get it in many different ways. And this is just one of the indicia. The fact that there was a prescription and he was later said that he went to the ER, he never raised that. The plaintiff never said that. The plaintiff never told the police in the interviews before you that he had the alibi. It was always settled. They did arrest him before the interview, did they not? I think they talked with him before they arrested him. All right. But the interview that you have in this record, but he didn't volunteer the alibi at any time. No, but the interview in the record was after arrest, wasn't it? The one that is in the record. But they have the wife is the one who came up with the alibi, and it was only three or four days later in question. Can we focus a little bit, too, on the second identification? Do you agree that there was something wrong with that photo array? Well, I don't. The second identity. The second Rite Aid person. Ms. Plasker? Yes. No. I don't believe that that was. Do you think it's okay for the officer to say after she's narrowed it down to six, isn't the one you — isn't this the one you kept looking at in the beginning? So we're here on de novo review, and as we put out in our brief, we do not believe that the record supports. The record has to be taken in the light most favorable. And taking the record in the light most favorable to that. There's simply no factual support for the fact that the officer said that. Doesn't Ms. Plasker say that in her deposition? She does not say that she said that before she made the identification. She — She does say that he said it, right? Yes. So your argument is that she doesn't say that she said it before she made the identification? Right. You think the record support is — the only way we can read this record is that she identified Mr. Horstman first, and then the officer said, good, because that's the person you kept looking at before? Well, and the whole circumstance of the way she went through it — I'm asking a very precise question. You think that's the only way this record can be read? I do think that's — I don't think you can make the inference that the district court made that this was said ahead of time. But did she say this all occurred afterwards? She did not. She never took back her identification. She never said anything like what the plaintiff represents and what the district court found occurred during that interview. So what do we do with the district court's finding? We're here on de novo review, but the magistrate judge who heard the evidence in this case or looked at the evidence made a factual finding that it occurred beforehand. Are you saying that finding is not supported by the record at all? I think the finding is not supported, but it doesn't need to be. Again, pulling back what you're looking at for qualified immunity is not probable cause. That's one of the elements. Was there a — did you have probable cause? But was there arguable probable cause? And the question is not whether the officers needed to have certainty that this person did it, that even clear and convincing evidence or even a preponderance of the evidence. As this Court stated in Garcia, there only needs to be a fair probability that this person was the one who was the perpetrator. But I want to go back because now you've shifted to a broader question. I'm just focusing now on this second photo array in front of Ms. Plexner. Let's assume that the magistrate judge's finding is correct, that the officer in effect identified one of the six as the person that she showed interest in. Would that make that photo array improper? I'm sorry. Say the question. Sure. Except the magistrate judge's findings is correct. If the magistrate judge's findings are correct, was the second photo array improper? I would say it could be viewed that way, but it doesn't matter because then you go to the indicia, that's not dispositive of the question either. You go to the indicia. That's why I'm trying to get your focus back on this one. Okay. You may well be right. You may win on the whole record. With respect to that second photo array, if the magistrate judge's findings are correct, wasn't that photo array clearly improper? I still don't think so. I don't think so. You think it's okay for an officer to say, now you've narrowed it down to six. Isn't this the one you were looking at before? Well, I don't think that's what it says. Well, I think this is what you said. Well, but just a minute. It seems to me that, and I'm trying to follow very carefully here, initially Plasker could not pick the person from the photo array. The only time Plasker could pick the photo from the array is after the officer said, doesn't that photo look like the one you've been talking about? And even then she said, well, I'm only 70% sure. And then, however, I did not see all of his features, but the nose, cheeks, beard, and forehead looked like the guy. Isn't that what she said? She did say that, yes. So I'm trying to figure out, and I'm letting my colleague ask those good cross-examination questions, why that's not an improper photo lineup when the police can't get her to do anything until they point to the person, and then she doesn't say it's really it, it's only 70%, and I'm not really sure anyway because I couldn't see all the features. Well, respectfully, that is not what the record shows. That's what the record shows. The police did not point to it. She said, that's the guy, that's him, and the record reflects that she said she saw the nose, the cheeks. Are you saying that the record is different than the district court set it out? Yes, I do. Yeah, the district court set it out incorrectly. Okay, so we have Domingo, we have Mears, we have Plasker. What else do we have? Well, plaintiff, I'm sorry, I'm into my rebuttals. I'm past my rebuttals. I understand that, but I'm in charge. Perfect. Also, the plaintiff himself looked at the surveillance video and said, hey, that's me. When he looked at that, he said, that's me. We have the witnesses who actually were robbed the first time around, who observed plaintiff when he came in with the prescription, who said, that's the guy, and took it on themselves to call 911, saying 90 and 80 percent, in looking at the whole person, not just a face, you know, eight faces that are remarkably similar to what the plaintiff looks like. Okay. I've allowed you to answer your question. Thank you. Okay. Thank you. May it please the Court. My name is Jesse Merithew, and I represent Adam Horsman. Defendant's argument in this appeal, as the Court has pointed out, hinges on a critical issue. They claim that the magistrate and the district court judge made an unreasonable factual inference in concluding that the identification made by Sherry Plasker was unduly suggestive. Well, let's assume that the district judge did a terrific job on this, and that his findings, the findings of fact, are fine. Why isn't there qualified immunity under this circumstance? What case tells me that this combination of facts? Grant v. City of Long Beach. Excuse me? Grant v. City of Long Beach. Well, does it really involve? I mean, what we have here are two people who originally say, I think that's him, and when shown the array, they say, well, one of them says it's one of these two guys. The second time through, you know, even throwing out the array, she at least puts him in a group of six that she believes is the robber. Probable cause isn't a very high standard. I don't think they met it here, but why should the police officers have known that it was clear there was no probable cause? What this Court held, what the police officers were required to be aware of in order to claim qualified immunity in Grant v. City of Long Beach is that a suggestive I.D. combined with mere similarities between the suspect and the person they arrest is not sufficient to make clear. So I throw out the second one. I'm perfectly okay in the analysis if you throw out the second photo array. Could we put it differently? The two clerks call and say, a guy just came to our store. We're 80 or 90 percent sure he's the guy who robbed it. Could they have rested Mr. Horstman at that point? No. Really? They need some information to determine the reliability of those statements. When we're talking about the case. What case says that? Well, I think all of the cases that talk about identifications and identification procedures going all the way back to the United States v. Wade in 1967 say that when you're dealing with a witness identification, you need to have some information about reliability. And if they had done that, what the deposition particularly of Brandy Mears shows is that Ms. Mears only viewed the suspect for a second and wasn't, she was not a witness to the robbery. She didn't even know that the store had been robbed until the next day when she was shown video surveillance and realized that she had greeted this person as he walked in the door, hello, welcome to Rite Aid. And when asked in deposition, were you looking, were you searching your memory, were you thinking about what you saw, the guy walking in the door, or were you thinking about what you saw in the video the next day? She said the video. So this is not a witness that you have any indicia of reliability. So what case tells me that the police, an eyewitness says, I saw Judge Smith robbing the store. And, you know, that was him. They can't arrest him without more. Is there some case that says that? I don't have a case at my fingertips on that point. But the thing that worries me, just following up with Judge Hurwitz's questions, I was looking for the case that said police officers have to examine the basis of the eyewitness's knowledge before making the arrest. I couldn't find the case. So what do I use? Well, I think if you look... I mean, if I don't have a case, then it isn't clearly established. If we need a case that lays out each of those principles before something is clearly established, then officers are never going to be liable for their conduct. But it isn't a matter of that. It's a matter of the officers have to be on notice about what they have to do. If they're not on notice about what they have to do, then they get immunity. And I can find something about making an arrest on a suggestive photo lineup procedure, because you pointed it out, Grant, it's pretty hard. But if I look at police officers did not examine the basis of the eyewitness's knowledge, which is another of your arguments, I said, what's the good case for that? And I didn't find it in your brief, and that's why I'm asking you now. Well, I think Grant stands for that same proposition when we get to the second step, when we look at the reliability. But the problem is, is that Grant really talks about an ID procedure that is so impermissibly suggestive as to give rise on a substantial likelihood of misinformation. But that's not did not examine the basis of the eyewitness's knowledge. They do in the second step. Well, if so, did the witness exhibit sufficient edition of reliability to protect the integrity of the ID? We only have one place where we can even challenge what happened on the ID. That's Plasker. Nothing happened on that as relates to Domingo. Nothing happens on that as it relates to Mears. Clevin, not very good. But nothing happened on that as it relates to them. So how do I go with that? Could they have arrested with just Domingo, Mears, and Clevin? I think the Court is asking a question about something that didn't happen. The police did not attempt to make an arrest of Adam Horsman on the evening of June 30th. Sir, your view is that if they, even if they could have, the subsequent events dissipated probable cause? Correct, Your Honor. What case helps me understand that that's clearly established? I'm sorry, on what particular point? So, I mean, I take it the argument, and you're doing this, you're responding correctly because it's a hypothetical. Maybe they could have arrested him at the very beginning, but then they conducted a photo array with Mears and Domingo, and it was inconclusive. Right. So at that point, they didn't have probable cause. And my question is, what case tells me that subsequent events can dissipate probable cause? Those two cases were Lopez and there was another case we cited in the briefing to the district court about that. We were making that argument primarily in the context of pointing out to the Court that the subsequent interview if found to be exculpatory, the search of the home if found to be exculpatory. He was arrested before the interview, wasn't he? Correct, he was. And so even if they hadn't interviewed him, you'd still have a false arrest claim, would you not? I'm sorry. Well, I'm having difficulty putting the search of the home and the interview into the analysis of your case because the arrest occurred before that. Maybe some of the imprisonment occurred after it, but the arrest occurred before it, did it not? It did. And if the arrest was done on probable cause, then nothing that the interview, the inconclusive interview and the search of the home really don't knock it down, do they? It could. It could create an obligation to the police. If the police learn after making a- And now I'm back to Judge Smith's question. So I'm trying to find out what case tells me that I've got to keep investigating. Judge Curiel has a question. Let me follow up with a concern that I have. Probable cause looks to the totality of the circumstances, correct? Yes. So as a result, it doesn't really lend itself to a precise metric or a standard. And you're relying upon the Grant case, which was a very, I think, simple case relative to ours because there's one victim, there are two perps who committed the rapes, and there was a very limited universe of information relating to the identification. Here it's much more multifaceted. You have two of the victims at the Rite Aid identifying the defendant or the plaintiff, I should say, at the pharmacy. So they're sizing him up, looking at him. You have that, you have in addition this similarity in clothing, wearing the dark clothes, wearing black and white shoes, being about the same height, the same beard. You have that being provided by a number of different people. Then you have the ability to compare a video, and granted it may not be crystal clear, but still it's something further. Then you have an additional perhaps even motive that, well, it turns out that this individual, the plaintiff, was also using OxyContin. And so to that extent, we have a much kind of wider universe of different facts that the police rely upon. At that juncture, doesn't it take it outside of the bailiwick of Grant? Doesn't it take it outside of that situation where they no longer match up? No. At the end of the day, the police and people on the street still have to apply the principles that the court hands down in cases to the facts on the ground. And in Grant, we had a serial rapist. There was multiple rapes and multiple witnesses. I think there was actually two identifications that the court found were unduly suggestive that the police were relying on in making the arrest. And they had a canine that had tracked the scent of the perpetrator to the building where Mr. Grant lived. And under those facts, the court said, you don't even have arguable probable cause. Qualified immunity does not attach. And so stacking up a bunch of facts, you can always do it in any arrest situation. But is this significant that the two Rite Aid employees had, who had observed the plaintiff, called the police and initially said that I'm 80 percent sure that this is the perpetrator and the other said I'm 90 percent sure? Does that have traction? Does that move the ball forward for the defendants? It would help their case if they had made an arrest that night. If this was an immediate situation. So Lopez says it can dissipate because you look at the facts that are known. Your colleague keeps talking about the totality of the circumstances. I think she's right. When do we look at the totality of the circumstances? At the time of the arrest? At the moment of arrest. So that if the initial witnesses have now said I'm not so sure, we can't go back and say, well, I could have arrested him before that. That's right. And that's what the district court cited Merriman for, that principle that, you know, maybe there was probable cause back here, but at this point you have a recantation, you have all sorts of moving parts. A reasonable officer would have investigated further. And that's the situation we have here. I see him out of time. Thank you. Thank you. I'll give you a minute. We took you over. Thank you. The U.S. Supreme Court has repeatedly ruled that qualified immunity should be granted where there is no existing precedent placing the officers on notice of what they did. What do you do with Lopez? That's his best case. That is distinguishable on its facts on this case. Because it's not they didn't have the 90 and 80 percent reliability that the first two witnesses first identified. But Lopez says perhaps there's probable cause at that point. But then subsequent events should have led a reasonable police officer to know that these witnesses didn't really have 90 or 80 percent reliability. There were many other circumstances here. And that was a much simpler case, as I believe as you had pointed out. Here we had two of the judges who, this was a magistrate and a very experienced Article III judge who looked at this. And they both said they struggled on this record on the question about whether there was probable cause or arguable probable cause. I mean, that alone places this decision outside the Supreme Court's rule that there has to be beyond debate whether there was a constitutional violation. In this circumstance, at worst, it was debatable. These district judge and the magistrate debated it. We're here debating it. If it's a close question, I think the U.S. Supreme Court decisions, including the White v. Pauli and the one we recently provided from January, D.C. v. Westby, require you to apply qualified immunity because it is not beyond debate that there was probable cause or arguable probable cause to arrest. Thank you. Thank you. This case is submitted.
judges: N.R. Smith, Hurwitz, Curiel